NorthPeak Wireless, LLC v. 3COM Corporation Good morning. May it please the court, my name is Christian Hurt and I'm here this morning on behalf of NorthPeak. The district court in this case erred when it improperly narrowed the register, storing, and means plus function terms in this case. I'd like to focus on the register and storing terms and time permitting move on to the means plus function issues. Of course, I'm happy to answer any questions. Well, let me ask you a logistical question, which is, am I correct in assuming that if we affirm on any of those terms, then the case is over? So there's two sets. If the court affirms on register, the case is over. If the court affirms on storing, the case is over. Part of the register issue is this explicit register notion. Those are independent grounds. The means plus function issues, however, if there is a reversal on register and storing, should the court affirm on means plus function issues, there are still claims in the case. So the means plus function alone doesn't resolve the entire case. Has this patent expired? Yes, Your Honor. It expired right around the time suit was brought in 2009. This case has just stayed for a good six years. So it's been expired since that time. Are there continuation patents that might be impacted by any construction of the term register or storing or the means plus function limitations? I don't believe so. So there were two related patents in this suit. The 577 patent that we're talking about today and the 05A patent. On the face of those patents, there is a continuation chain, but all of those patents have since expired. I believe all of them start with either a 4 or a 5. I'm not aware of any other patents that would be affected. Okay. Thank you. So on the register issue, with regard to that term, the district court committed three errors, each of which flow from the prosecution and reexamination histories of this patent. The first is prosecution history disclaimer. The court incorrectly concluded that North Peak had disclaimed registers that were embodied in random access memory or RAM or buffers or regular memory. Second issue is the court carried that understanding of the term register into how it read the fourth edition of the Microsoft Dictionary that North Peak cited as an example definition of register and the reexamination. And then third, the court added this explicit gloss on top of the register term beyond North Peak's construction that these registers are just designated or specific portions of memory. The district court didn't, in its claim construction, necessarily exclude RAM and other memory, but it simply just adopted a version of the Microsoft Dictionary definition. So the court resolved as a matter of law, as a matter of claim construction, that RAM, regular memory, and buffers are excluded outside the scope of the claims. But in the formal jury charge that would have gone to the jury had this case proceeded, the court adopted the language from the Microsoft Dictionary definition, the fourth edition, that North Peak cited as an example definition of a register in that second reexamination. But the issue was resolved as a matter of claim construction that that definition, as well as disclaiming statements the court found in the reexamination history, really excluded RAM-based or memory buffer-based or regular memory-based registers. And so there wasn't, that issue was resolved as a matter of law. And the court's error on those two fronts was twofold. First, in the reexamination history, North Peak proposed the exact same definition to the patent office that it proposed to the district court. It designated a specific portion of memory. And the patent office actually adopted that definition. And the district court should have as well. We had evidence in the record that in 1988, when this patent was filed, those of ordinary skill in the art understood that a register was really just a device within a computer processor capable of retaining data. And this is the 1988 IEEE dictionary that's at 442 in the appendix. Yes, Your Honor. Do you know who Mr. Mayberry is? I believe he was counsel for North Peak in the second reexamination. Because I'm just reading from the examiner's interview summary where the examiner said Mr. Mayberry submitted that register cannot be any type of memory, hence storing information such as preamble or address in a regular memory would not anticipate claim convention, end quote. So, did the examiner inaccurately understand Mr. Mayberry's position there? Well, there are two responses. The first is that this is the examiner's statement of what happened. And this occurs prior to North Peak's formal response and the office action. And in that response, North Peak proposed a definition of a specific or designated portion of memory. That's what a register is. And the reason that's important is to understand this sentence that hence storing information such as a preamble or address in a regular memory would not anticipate the claim convention because regular memories, and this is all of the distinctions that were made on Dixon and Kahn and Messenger, is those general memories that are not designated or specific, those are not registers. But there's no exclusion of the type of way you construct memory, whether it's RAM or memory buffers or microprocessor memory. If that memory is sort of cordoned off as if it's specific and designated for something, it can be a register. And the Dixon and Kahn references only disclose general packet buffers that are not designated or specific. If you look at the reference, they're undesignated. I guess the concern I have is in the prosecution history, Mr. Mayberry or somebody else on behalf of North Peak was arguing that these prior art references, whether it's memory, and those references don't disclose outputting it from a register. And so that's why the claim register is different from Kahn and Dixon. And so what I'm seeing here in the prosecution is categorization of different places to store data by vocabulary. There's something called a memory, a RAM, and there's another thing called a register. And I see what you're arguing now is something a little more nuanced than what I see in the prosecution history. Well, I think first, and I believe this point is undisputed, that when you have the IEEE dictionary defining register as just a device that's capable of retaining data, certainly in the broader term, memory, a register can constitute memory. And I think it's undisputed that a register certainly is at least a type of memory. So if Your Honor is reading the statement from the prosecution history that there's a distinguishment between registers and memory, that is improper because memory is sort of the genus and that would almost exclude a register from being a register. Right. So I guess what if the prosecution history was basically saying the prior art discloses a genus. The claimed invention is a species of the genus. And so there's the distinction from the prior art. Then I think the fairest reading of all that is that the claimed invention is excluding everything else in the genus except for the species. Well, and Judge Chen that isn't what happened here because the proposed construction of register that Northpeak proposed, and this isn't just one that Northpeak proposed, the examiner adopted in the notice of allowance, makes a distinction between designated and specific versus undesignated. So the more apt analogy is no, the prior art references here disclose a different type of species, undesignated, nonspecific. And if Your Honor looks at the references, that's what Dixon and Kahn show is just one black box that holds everything. It doesn't tell you if that is cordoned off for the preamble, the address, and the data. And that that's what is not a register. But that a register is really any type of memory so long as it's designated or specific. And I think it would be a harder case for Northpeak if the examiner didn't expressly adopt that construction in the notice of express construction to the patent office. If this were a situation where all we had was some of these statements that could be taken out of context, it's a harder case. But when looking at the reexamination record, the court has to look at the full record. And that full record shows that Northpeak proposed a very specific construction. The same one we proposed in this lawsuit of just a designated portion of memory in a computer processor. That's what distinguished Dixon and Kahn. The examiner said that that's what distinguished the Dixon and Kahn references in the notice of intent to issue the reexamination certificate. And that's how I think one of ordinary skill would read that history. And the designated or specific language is important. So there's this sort of explicit or as the court said sort of dedicated or as the defendants say explicitly reserved and dedicated for only doing this one function on this one type of data for all time. However, the Northpeak in the reexamination linked the designated or specific region of memory language to the earlier statements the examiner made about explicit registers. And that flows because we have three claim elements here. A preamble register, an address register, and a data register. And the specific or dedicated portion of memory language really captures what Northpeak and the examiner understood the explicit language to refer to. Not that these registers had to be dedicated for all time, and can only be used for one function, but that you just have a designated or specific portion of memory. And so the court in rejecting our construction of explicit and in rejecting our construction of register improperly added that gloss onto the claims. And that's shown in Northpeak's response to the first office action specifically in the claim construction section that's on appendix 685 and 686 in proposing the construction of a designated or specific region of memory Northpeak cites for support the examiner's statement regarding explicit registers and that's the paragraph that spans 685 and 686. I see I'm into my rebuttal time and I didn't get to storing or means plus function elements unless the court has any questions. However, I'll reserve the balance of my time. Thank you. Morning. May it please the court. My name is Chad Campbell. I'm appearing for Intel, but speaking on behalf of the police generally today. I think a little bit of context would help for the register points and we agree with the other side that there are three constructions that Judge Ilston arrived at, any one of which would allow the panel to affirm across all of the asserted claims. That would be the definition of register, the construction of preamble address and data registers as being explicit, and then the construction about what it means to have a register store information. The patents did expire in 2008. A few months after Intel intervened, the patents were put into a re-examination because there were military pieces of prior art that involved spread spectrum systems where preamble address and data were assembled in memory and then transmitted along. The military applications involve very large packets in the thousands of bits. The packets that are described in the patent are as small as 76 bits. And so where the patent was teaching the idea of using registers, the prior art was teaching the idea of using memory, regular memory where you can store a lot more information in order to send the packets. Our premise in our petitions was because the accused products also used just memory in order to assemble the packet pieces, this patent cannot both be infringed and remain valid. So we submitted our petitions, they were ex parte, there was back and forth with the patent office, and North Peak's decision to combat the prior art was to double down on the definition of what a register is. The claims refer to registers, a preamble address and data register, and they argued that in the prior art you didn't have that kind of explicit register structure. Judge Ilston's definition of register or construction of register is taken from the Microsoft computer dictionary definition that the North Peak patentee submitted during re-examination. A couple of observations about that dictionary definition compared to the IEEE dictionary definition. First, it is intrinsic in the sense that it was put into the record during re-exam, in the middle of the case, and it is specific on this distinction between general or regular memory and what a register looks like inside of a microprocessor, which is what the patent discloses and seeks to claim. The principal differences that the Microsoft dictionary points to and which were used by the patentee in order to overcome the prior art include that it's a small named region of high speed memory, and then critically that you reference it, that programs reference it by a name instead of by an address. In the file history when they got to talking about their specific reasons for why the prior art was different from what they were claiming, they did say that they proposed this construction that you needed a designated and specific region of memory, but in the very next sentence they go on to say, and that's consistent with the way a person of ordinary skill in the art would understand the definition, then see, for example, the Microsoft dictionary definition. So we have the patentee making an argument, and Judge Yelston agreed with this, that a person of skill reading this patent would understand a register to have those attributes, that it would be small and named, that a program would access it by the name instead of by an address, and that ended up being the way that they argued that these military systems which use general memory didn't satisfy the reach of the claim. I'd like to highlight for example the summary by the examiner of the argument. There are a couple of things to note about this argument summary. It is a little bit more specific than those summaries are sometimes, but it also notes that North Peak's lawyer, Mr. Mayberry, came with a fairly Microsoft dictionary definition. It's cited by the examiner here. He says more specifically the term register has been explained to have a specific... Yes, I'm sorry. Appendix 934. More specifically the term register has been explained to have a specific meaning which allegedly has not been taught by Dixon and located within a microprocessor. And then critically the next sentence, accordingly Mr. Mayberry submitted that register cannot be any type of memory, hence storing information such as preamble or address in a regular memory would not anticipate the claimed invention. When a preamble or an address or the computer needs to have those memory addresses in order to know where to go get them. But that wasn't the specific and designated portion of memory that North Peak was arguing about. They were arguing about the kinds of registers that you would see in a microprocessor where you have a name that a program can use to go get it instead of an address where you've got to go I'd like to turn if I could just briefly to the explicit register construction. Before you go there, the other side points out that I guess in the notice of allowance, the notice of intent to issue a re-exam certificate from NERC, the examiner used their preferred definition for a register to be a designated or specified region of memory. And so therefore in their view the examiner ultimately and all along adopted that broader more nebulous definition for register. What do you have to say about that? If we look at Appendix 990 and 991, that is the portion of the examiner's explanation in the NERC, the examiner first describes their arguments and then in the examiner's response halfway down the page on Appendix 990 says that she found the above arguments persuasive and then goes on to say that we're applying the ordinary and customary meaning as understood by a person of skill in the art at the time of the invention. Accordingly, the examiner has found Dixon does not teach the preamble register in accord with the interpretation recited on page 12 of the preamble register requires a designated or specific region of memory in a computer processor for storing and outputting a preamble. I believe that's the sentence my colleague is referring to. The very next sentence, furthermore, the Microsoft Computer Dictionary 5th edition, that's a different edition than the one that they had cited in the papers, but the substance is the same, defines the term register as a set of bits of high-speed memory within a microprocessor or other electronic device used to hold data for a particular purpose and here critically each register in a central processing unit is referred to in assembly language programs by a name such as AX, the register that contains the results of the arithmetic operations in an Intel 8086. So in the NERC, the examiner is repeating the understanding of what a real register is and that inside a microprocessor, those registers are small, they're named, is different from a regular memory like a RAM, a random access memory, or a buffer where you need to have an address that's decoded first before the computer knows where to go and get it. So from beginning to end, from the interview to the submission to the NERC, we have this theme that register is a real register inside a microprocessor, not a regular memory. Turning briefly to the requirement that the registers be explicit, North Peak and the original applicant both agreed with the idea that what is not only disclosed in but claimed by this patent requires an explicit memory structure where you've got a preamble register, a different address register, and a different data register. Their proposed construction in the Markman phase of the case was simply not to use the word explicit at all. They did not have an alternate construction. The defendants proposed that we should include the word explicit not only because the claim language is set out that way, but because the arguments that happened to the PTO required that you have explicit registers. And I think the debate here, as I was reading the briefs again, might have seemed a little bit confusing. I think it's actually easiest to understand what is going on and what's dividing the parties by looking at page 11 of the gray brief. After explaining their position with respect to why the word explicit should not be required, at the bottom of the first paragraph on page 11 of the gray brief, North Peak points out, of course, those portions of memory can overlap at different times, and different portions of memory can serve as a register during storing and transmitting intervals. So in other words, what's going on and what they need to be able to do to have an infringement case is to be able to accuse a system like the prior art, where you would have a buffer and for the first packet, you might have particular regions or addresses of that buffer that would hold the individual packet pieces. Then the next packet comes in and maybe different lines of the memory would be holding those packet pieces. They would call at one snapshot in time the places that are holding the preamble for packet one, the preamble register, but at a different snapshot in time where you've got the preamble in a different spot, they would say, well, now those lines of memory are the preamble register. That's exactly Kahn. That's exactly Dixon. You've got large memories where the packets are coming through. The pieces end up in different spots and they said, no, that wasn't the invention. You need to have explicit registers. Just like you see in figure two. The preamble always goes in the preamble register. The address goes in the address register. The data goes in the data register. The  When Judge Ilston asked in the Markman hearing, asked counsel about this point, she said, those were the words that your client used and counsel agreed, yes, we're stuck with those words. We would submit that Judge Ilston got it right. The patentee argued to the PTO that you needed an explicit register structure with preamble address and data registers. Judge Ilston simply adopted that language, which was used in order to overcome the prior art. We don't believe that error can be assigned there. I see that my time is just about to expire. If there aren't any other questions, I'll sit down. Thank you. Mr. Heard, you have a few minutes left. I'd like to start with the explicit register point because that's where counsel Frentel left off. At the Markman hearing, the reason the North Peak's lawyer, who was me, said we were stuck with that language is because it is in the prosecution history. The language stuck with it means it says what it says. Not that we agreed that that language had the limitations that Intel was trying to seek. And there's two points that really show what North Peak intended explicit registers to mean. The first is what I refer to in the response to the office action when North Peak expressly proposed its construction of register and linked the separate and distinct language to explicit. And later on in that office action when North Peak addressed Kahn and mentioned in that response that Kahn fails to disclose the explicit register structure in the claims which have three claim elements. So that's the linkage. There are three claim elements. That's what explicit means. That requirement under this court's Gauss case and others that when you have separate elements, you've got to point to separate things. That's what the explicit language refers to and is captured in that separate or designated language that North Peak proposed. On the point that the registers if they switch locations would be just like Kahn and Dixon. That's incorrect. Kahn and Dixon just have black box memories that don't really disclose exactly where the preamble data and address are. And I would note that we're talking about two sets of claims here. Apparatus claims and method claims. And for method claims to be infringed, that method just has to be performed once. So if you have a preamble register, a data register, an address register, and that meets the claims for that one transmission interval, that's an infringement. And it's going to be a separate question the next time the process is performed to look at those designated or specific portions of memory. So reading that explicit reserve for all time limitation on the claims conflicts with the fact that 13 and 14 are method claims that only need to be performed one time to infringe. Quickly on the Microsoft definition. I know I'm out of time. This court's case law requires clear and unambiguous disclaimer. There's no mention of disclaiming memories accessed by address in any of the Microsoft definitions. All there is is just that it's a high speed region of memory and the fact that the examiner used the 1995 definition, which is broader, and more importantly cited North Peak's exact construction as the reason why Dixon did not anticipate those claims. The construction North Peak proposed earlier, which undisputedly does not exclude RAM regular memory, that shows that the district court here should have entered that exact same construction and it erred when it did. Unless the court has any further questions. Thank you.